UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KURT W. LANG,

     Plaintiff,

Vs.                                                                                        CASE NO.:

MARRIOTT INTERNATIONAL, INC., AND
RENAISSANCE HOTEL OPERATING COMPANY,
A WHOLLY OWNED SUBSIDIARY OF
MARRIOTT INTERNATIONAL, INC.,

     Defendants.

_____/

## COMPLAINT

COMES NOW, Plaintiff, KURT LANG, (the "Plaintiff") by and through his undersigned counsel, and hereby sues the Defendants, MARRIOTT INTERNATIONAL, INC., ("MARRIOTT") AND RENAISSANCE HOTEL OPERATING COMPANY A WHOLLY OWNED SUBSIDARY OF MARRIOTT INTERNATIONAL, INC., ("RENAISSANCE") and (MARRIOTT AND RENAISSANCE referred to jointly as "Defendants"), in support thereof alleges the following:

## THE PARTIES

1.     The Defendant, MARRIOTT, is an employer as defined by the laws under which this action is brought and employs the requisite number of employees, having over 100,000 employees.

2.     The Defendant, MARRIOTT, is a multinational hospitality company that manages a broad portfolio of hotels around the world.  MARRIOTT is a Delaware corporation headquartered in Bethesda, Maryland and conducts business within Florida and this jurisdictional district.

1

3.     The Defendant, MARRIOTT, creates and implements policies, that include pay policies, discrimination policies, discipline policies, and complaint procedures, both orally and in writing for its employees, including Plaintiff.

4.     The Defendant, RENAISSANCE, is an employer as defined by the laws under which this action is brought and employs the requisite number of employees, with over 5,000 employees.

5.     The Defendant, RENAISSANCE, is part of a worldwide brand of hotels and resorts owned by the MARRIOTT INTERNATIONAL, INC.

6.     The Defendant, RENAISSANCE, is a foreign corporation organized under the laws of the State of Delaware and, at all times material hereto, was and is authorized to transact business in the State of Florida, and was and is doing business in Pinellas County, Florida.

7.     The Defendant, RENAISSANCE, runs a hotel and golf club located at 501 Fifth Avenue, NE, St. Petersburg, FL 33701 owned by SCG Hotel, LLC d/b/a The Vinoy Renaissance St. Petersburg Resort & Gulf Club ("Vinoy Golf Club"), employed Plaintiff, implemented policies and ran payroll for its employees.

8.     At all times material hereto, the Plaintiff was and is a resident of St. Petersburg, Pinellas County, Florida, a location within this Court's jurisdictional district.

9.     The Plaintiff occupies a protected age category having been born on August 4, 1961, and therefore was age forty (40) or older at all times material hereto.

10.    The Plaintiff was an employee of Defendants from January 2002 through October 2019.

**JURISDICTION AND VENUE**

11.    This is an action for discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") and the Florida Civil Rights Act of 1992, Fla. Statute § 760.01 – 760.011 ("FCRA").  This action also includes a claim for unpaid overtime

under the Fair Labor Standards Act, 29 U.S.C. Section 207(a)(1) ("FLSA"), unpaid minimum wages under Article X, Section 24 of the Florida Constitution and a claim under Florida's Whistle Blower Act, Fla. Stat. § 448.102 ("FWA"). The damages sought for this action exceed seventy-five thousand dollars ($75,000.00) exclusive of attorneys' fees, interest and costs.

12.     Venue lies within Middle District of Florida because a substantial part of the events giving rise to this claim arose in this judicial district, specifically in Pinellas County, Florida.

13.     This Court has original jurisdiction over claims under the ADEA and the FLSA, pursuant to 28 U.S.C.

14.     This Court has supplemental jurisdiction over the claims brought under the FCRA, the Florida Constitution, and the FWA, pursuant to 28 U.S.C. § 1367.

## ADMINISTRATIVE PREREQUISITES

15.     All conditions precedent to bringing this action have occurred.

16.     On December 11, 2019, the Plaintiff timely filed a dual charge of discrimination (the "Charge of Discrimination") with the Equal Employment Opportunity Commission ("EEOC"), and the Florida Commission on Human Relations ("FCHR"), thus satisfying the requirements of 42 U.S.C. S2000c-5(b) and (e). The Charge of Discrimination was filed within three hundred sixty five (365) days after the alleged unlawful employment practice occurred. On September 4, 2020, less than ninety (90) days prior to filing this Complaint, the EEOC issued to the Plaintiff a notice of right to sue (the "Notice of Right to Sue") with respect to the dually filed Charge of Discrimination. True and correct copies of the Charge of Discrimination and Notice of Right to Sue are attached hereto and incorporated by reference herein as Exhibits "A" and "B," respectively.

## GENERAL ALLEGATIONS

17.     The Plaintiff began his employment with the Defendants on January 28, 2002, and at all times relevant herein, the Plaintiff was an employee of the Defendants.

18.     Based on his education, experience, professional reputation, and certifications Defendants promoted Plaintiff to a Golf Teaching Pro I, handling increasingly responsible job duties during his career with Defendants.

19.     As a Golf Teaching Pro I, Plaintiff performed the following job duties as required by Defendants: daily interaction with Vinoy Golf Club members, providing golf lessons to Vinoy Golf Club members and their children, worked with the golf maintenance staff, handled the golf practice range, utilized training equipment (including, but not limited to becoming certified in the Trackman Training System), promoted sales of golf equipment and golf fitting, and repaired golf clubs.  Plaintiff also maintained his PGA Specialty Certification through the Harvard Business School, and maintained recertification points for the PGA.

20.     Plaintiff also performed additional types of work for Defendants outside the scope of Defendants job description for his position, including, but not limited to the following: set-up for various golf tournaments, assisting at various golf tournaments, clean-up for various golf tournaments, performed work for various Vinoy Golf Club functions, acted as the starter, acted as the ranger, assisted with cart procurement, perform the job of a cart attendant, often returned to work after hours to assist in closing the golf facility, or opening the golf facility, assisted with hurricane preparedness and cleanup, ran errands to the store, helped move shop supplies and equipment, provided ladies golf clinics, regripped golf clubs, and attended meetings outside of normal working hours.

21.     Defendants often required Plaintiff to work more than 40 hours in a week to complete his duties and responsibilities, and to perform the work that was outside his duties and responsibilities.

22.     Defendants paid Plaintiff based on a tip credit, allowing Defendants to pay Plaintiff an amount less than the hourly minimum wage.

23.     Defendants failed to pay Plaintiff one and one-half his regular rate for those hours worked in excess of 40 hours in a week, in violation of overtime laws.

24.     Defendants also required that Plaintiff work more than 20% of the time on work that was not applicable to the type of work that receives tips work and not performed contemporaneously with the duties involving direct service or for a reasonable time immediately before or after performing such direct service duties.  For the hours Plaintiff worked on the type of work that was not applicable to the type of work that receives tips, Defendant failed to pay Plaintiff Florida's required hourly minimum wage, in violation of Florida law.

25.     From 2002 through his termination on October 8, 2019, Plaintiff was managed by the Director of Golf, Randy Mosley.

26.     From 2002 through September 2017, a period of over 15 years, Plaintiff worked with other employees of Defendants who worked in various positions.  The interaction with these employees over this time was daily, frequent and constant.  The interactions and communications were professional and without incident.

27.     Throughout his employment with the Defendants, the Plaintiff received excellent performance reviews and many accolades from both Defendants management and Vinoy Golf Club members.  Throughout his career Defendants, Plaintiff established relationships with Vinoy Golf Club members, resulting in a very positive reputation of Plaintiff.

28.    Plaintiff never received any oral or written discipline during his career with Defendants until September 2019, *after* he made complaints, discussed *infra*.

29.    Starting in September 2017, Plaintiff's work environment changed.  Plaintiff had just returned from medical leave.  Employees Brian Oliver and Mike Bell and manager Randy Mosley began making age related comments about Plaintiff, and to Plaintiff, on a daily basis.   These comments included calling Plaintiff "old big-boy," that Plaintiff is "old and slow," that Plaintiff is "old and fat," that Plaintiff cannot keep up with the younger co-employees, that Plaintiff should retire, and that some of Plaintiff's duties should be assigned to younger employees and that Plaintiff was milking his disability.  These employees would also undermine Plaintiff's work and make fun of his limp behind his back.  These comments, undermining actions, and mocking Plaintiff continued throughout 2018.

30.    Also in September 2017, Defendants, via manger Randy Mosley, removed job duties from Plaintiff because he was allegedly "too old to keep up" with these job duties.  This resulted in a reduction of income to Plaintiff.

31.    Plaintiff complained to manager Andy Mollerud about the age related comments and harassing treatment received from Brian Oliver and Mike Bell in 2018.  Andy Mollerud indicated that he would talk with Randy Mosley.  However, neither Andy Mollerud nor Randy Mosley took any action to stop the harassment from Mike Bell or Brian Oliver.  Instead, Randy Mosley acquiesced to the harassing treatment Plaintiff received from co-workers and participated in the same type of treatment by calling Plaintiff "fat and old" in front of Vinoy members.

32.    In another instance, on April 28, 2018, Plaintiff was being harassed by Brian Oliver. Plaintiff frustrated and upset by the harassment from Brian Oliver, immediately went to Randy Mosely's office.  Randy Mosley's manager Doug Fisher was present in Mosley's office.  Plaintiff

pleaded with Mosley to stop the harassment from Brian Oliver. Instead of handling the matter, Mosley told Plaintiff he needed to suck it up and called Plaintiff a "cry-baby" in front of Doug Fisher. Mosley then quietly reprimanded Plaintiff outside of earshot from Doug Fisher, telling Plaintiff that he acted inappropriately when Plaintiff complained in front of Doug Fisher, Mosley's manager.

33.     During other events Brian Oliver made condescending comments to Plaintiff about his age and his size, comments that were demeaning Plaintiff in front of others.

34.     In one instance, Mike Bell glued Plaintiff's equipment room door closed, causing Plaintiff a delay in performing his job responsibilities.

35.     After this, sometime in the summer of 2018, Defendants' HR personnel held a meeting to discuss the problems with Brian Oliver.  Others complained about treatment they had received from Brian Oliver.

36.     After the harassing treatment did not stop, Plaintiff called the MARRIOTT's home office in Bethesda, Maryland on February 25, 2019, to complain, believing that his complaint was confidential.  Plaintiff complained about the treatment by Plaintiff's co-worker, Brian Oliver. Plaintiff also complained that Randy Mosley let Brian Oliver get away with it.  Plaintiff also complained about co-employees drinking while on the job and the illegal drinking and driving that had occurred at a golf tournament by a co-employee resulting in damage to a golf cart as evidence of the lack of institutional control and the environment in which Plaintiff worked.

37.     After having alleged these confidential complaints, Plaintiff received comments from co-workers and from Randy Mosley that suggested that they knew he had complained.  The comments included statements to Plaintiff directly "I wonder who complained." "Hey Kurt, we know you said something." Plaintiff denied complaining.

38.     In addition to these comments, Plaintiff received retaliatory treatment.  He was ignored in meetings, mocked, and placed into bad situations with other employees.

39.     In one instance during a Vinoy Golf Club dinner event, Brian Oliver, Andy Mollerud, Manny Bassig, and Randy Mosley went around to all the tables at the event ceremoniously greeting the members at each table.  However, they purposely bypassed Plaintiff's table, causing Plaintiff some embarrassment to the members at his table.

40.     On another occasion in April 2017, Randy Mosley instructed Plaintiff to remove a friend of Bobby Floodine's from the golf range.  After Plaintiff removed Bobby Floodine's friend, Randy Mosley made Plaintiff announce to Brian Oliver, Andy Mollerud, and Yong Park that Plaintiff was responsible for removing Bobby Floodine's friend.  Brian Oliver immediately left that location to tell Bobby Floodine that Plaintiff removed Floodine's friend.

41.     After this occurred, Bobby Floodine joined Brian Oliver to make fun of Plaintiff's "old age," via comments and actions.

42.     On at least 4 separate occasions between April 17, 2019 and April 23, 2019, Bobby Floodine and Brian Oliver purposely removed items from Plaintiff's golf cart and golf bag causing Plaintiff some delay in performing his job duties.

43.     Plaintiff complained to Andy Mollerud about this harassment.

44.     From April 2019 through September 2019, Floodine began threatening that he was going to take Plaintiff's job and made comments to Plaintiff about his weight and his age on a daily basis. Mosley failed to take any action to alleviate this daily harassment despite Plaintiff's complaint about Floodine to Mosley.

45.    Plaintiff also complained several times to Mosley about the associates driving the golf carts while drinking.  Mosley responded to Plaintiff "your lucky you have a job!"  Mosley would then tell the associates that Plaintiff was complaining about their illegal activities.

46.    On Thursday, September 12, 2019, Bobby Floodine began accusing Plaintiff of stealing small bottles of liquor.  Floodine was loud and obnoxious to Plaintiff with these threats.  Floodine was intoxicated in this incident.  Plaintiff walked away.

47.    On September 16, 2019 Bobby Floodline was washing carts at dusk, but was intoxicated. He began yelling at Plaintiff that Plaintiff shouldn't be here.  Plaintiff responded by tossing a small gray golf towel and said "let's throw in the towel," his attempt to stop the harassing treatment.

48.    On the afternoon of September 17, 2019, Floodine had been drinking and was clearly intoxicated while at work.  While intoxicated, Floodine accused Plaintiff of taking $10 from a stack of tips. He became belligerent and was yelling at Plaintiff.  Plaintiff refused to engage Floodine, but attempted to calm him down. There were no other employees in the area during their discourse.

49.    Plaintiff reported to Andy Mollerud that he had an issue with Bobby Floodine who was drunk and accusatory towards Plaintiff.   Mollerud was busy and indicated that he would talk with Mosley.

50.    Several days later, on September 19, 2019, Mosley approached Plaintiff indicating Plaintiff was being disciplined for a dirty bathroom.  Mosley also said that he was aware that Plaintiff and Bobby Floodine had a verbal dispute, that resulted in Plaintiff's threatening Floodine.  Plaintiff steadfastly denied that he had threatened Floodine.  In fact, Plaintiff again indicated that Floodine was intoxicated and was verbally abusive to Plaintiff, alleging that he took $10.  Plaintiff went on to tell Mosley that the Defendants had not taken care of all the problems, including the harassment

9

against him, and the drinking and driving of the golf carts by Manny Bassig, Bobby Floodine, Dave Miller, and Mike Bell.  Mosley then told Plaintiff that "the monkey is on your back, you can tell HR all of this."

51.    As directed by Mosley, Plaintiff met with Defendants' HR personnel, Viviana Leyra, on September 22, 2019.  Plaintiff told Viviana Leyra that Floodine had been harassing him for months, worked while intoxicated and threatened Plaintiff about theft on multiple occasions without any repercussions from management.  Plaintiff also reported the drinking and driving that was taking place.  Viviana Leyra forced Plaintiff to reveal the names of the four employees that were drinking and driving golf carts, by threatening him with termination if he did not reveal their names.

52.    After Plaintiff's complaints, Mike Bell falsely claimed that Plaintiff threw a pipe that damaged a computer.  Mosley had Dave Miller falsify a statement to support this false allegation.  Mosley spoke with Plaintiff about this allegation on September 27, 2019, which Plaintiff denied.  Manny Bassig was the person who hit the computer with his fist.  This false story was improperly used as a "prior written warning" to support the termination incident of September 17, 2019, despite occurring 10 days later.

53.    Mosley and others concocted the story that Plaintiff had made a mess in the bathroom and that Plaintiff threw a towel at Floodline.  These false facts were also used to include as part of his termination.

54.    Plaintiff was temporarily suspended on October 3, 2019, and then terminated by Defendants on October 8, 2019, for allegedly threatening Floodine, an allegation that was untrue.

55.    Plaintiff requested that Defendants pull the video from the surveillance cameras to show that he had not thrown a pipe and had not threatened Bobby Floodine, but Defendants refused.

56.     At the time of his termination, the Plaintiff was fifty-eight (58) years old and had worked for the Defendant for over eighteen (18) years.

57.     HR offered Plaintiff Defendants' Peer Review process, indicating that this was his opportunity to find the truth in this unbiased and fair process, and that enabled him to call witnesses.

58.     Before the Defendants' "Peer Review" process, Plaintiff met with Doug Fisher on two occasions. Doug Fisher reached out to Plaintiff via text and by phone. Mr. Fisher indicated that he would help walk Plaintiff through the Peer Review, confirming that Plaintiff had "nothing to worry about," and suggested that Plaintiff call him "Doug." In turn, Mr. Fisher requested that Plaintiff provide a written statement about all the management problems that had arisen at the golf club focusing on the lack of management oversight to all of Plaintiff's complaints. Plaintiff drafted an 8-page statement of issues related to the management issues as Doug Fisher requested and provided it along with multiple copies to Doug Fisher, HR, and the Defendants executive committee.

59.     Plaintiff nonetheless felt comfortable with the Peer Review process knowing that Floodline was falsely accusing him of the threat, and because two employees refuted Floodline's story. Plaintiff submitted these two co-employees' names to the Defendants for appearance at the Peer Review hearing, Evan and KC. Despite having submitted this request to the Defendants, neither witness was called. Specifically, these two employees would have provided testimony that refuted Floodline's allegation of a threat by Plaintiff and Floodine's intoxication on the job. Had these witnesses been permitted to testify, the Peer Review would have properly found for Plaintiff allowing him to continue in his position with the Defendants, a position he held for 18 years.

60.     After submitting this written statement to Doug Fisher, and having gone through the Peer Review, Mr. Fisher immediately withdrew from any helpful assistance to Plaintiff. Instead, Mr. Fisher told Plaintiff, "I am no longer talking to you."

61.     In addition, two individuals on the Peer Review Board have since indicated to Plaintiff that the decision to uphold his termination was predetermined.

62.     Defendants failed to investigate the discriminatory treatment Plaintiff received because of his age, retaliated against Plaintiff for complaining about illegal activities, and terminated Plaintiff for similar conduct that younger employees also engaged in, but were not disciplined. Plaintiff was replaced by an individual younger than him.

63.     Other employees were treated more favorably then Plaintiff, including those that employees whom violated Defendants' policies with infractions equal to or greater than the alleged infraction for Plaintiff's termination. The following employee violations were not disciplined: Brian Oliver and Manny Bassig driving the golf cart into the lake while intoxicated; Randy Mosley threatened two female Vinoy members that resulted in a complaint; Bobby Floodine and Manny Bassig showed up to work either high on marijuana or drunk and many times were photographed sleeping or passed-out; Mike Bell took photographs of members, then sent the photographs to others with vulgar comments Manny consistently leaves his shift early, in some instances claiming he is hungover; Bobby Floodline returned from lunch hungover on many occasions; Bobby Floodline permitted use of the driving range to outsiders; Mike Bell left the Defendants on two prior occasions, yet the Defendants hired him back; Yong Park received a DUI, but still remained employed; Manny Bassig received a DUI, but still remained employed. Brian Oliver has had a troubled history with both the Defendants and Marriott World Golf, but the Defendants permitted

him back as an employee, and he continues as an employee in Atlanta; and employees driving golf carts while intoxicated without discipline.

64.    Employees who work for the Defendant for over twenty-five (25) years receive very valuable benefits, including complimentary stays at any of the Defendant's approximately thirty-five hundred (3,500) hotels on Fridays, Saturdays and Sundays, and free room at the Defendant's timeshare properties during the week, for the rest of their lives.

65.    In addition, employees that work at the Vinoy Golf Club get unlimited golf membership upon 10 years of service.

66.    After eighteen (18) years of dedicated service to the Defendants, the Plaintiff is no longer eligible to receive the valuable benefits that he would have received if he continued to remain employed.

67.    Given the Plaintiff's illustrious eighteen (18) year history with the Defendant, he would have continued in his position through retirement, had he not been terminated.

## COUNT I – AGE DISCRIMINATION PURSUANT TO
## THE AGE DISCRIMINATION IN EMPLOYMENT ACT

68.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 67, as fully set forth herein.

69.    At all times material hereto, the Plaintiff was and is a member of a protected class under the ADEA, at 58 years of age.

70.    The Plaintiff was qualified for the position on Golf Teaching Pro I.

71.    Plaintiff was subject to severe and pervasive age related comments and subjected to concocted stories that led to discipline from Defendants and created a discriminatorily abusive hostile work environment.

72.    Defendants knew of the harassment as Defendants' supervisors condoned and participated in the age related harassment.

73.    Plaintiff complained to Defendants of the discriminatouly abusive and hostile work environment, but Defendants failed to take any action to correct the hostile work environment.

74.    Plaintiff suffered an adverse employment action.

75.    The Plaintiff's age was a determining factor in Defendants' decision to discharge the Plaintiff.

76.    Defendants terminated Plaintiff and replaced him with a younger individual.

77.    The Defendant's violation of the ADEA caused the Plaintiff to suffer the following damages; loss of both past and future income, loss of both past and future employment-related benefits, resulting pain and suffering, mental anguish, loss of capacity for enjoyment of life, loss of personal reputation, humiliation, depression and anxiety.

78.    Plaintiff is also entitled to liquidated damages for the willful conduct of Defendants.

79.    The Plaintiff has retained the law offices of Mandelbaum, Fitzsimmons, Hewitt & Cain, PA to represent him in this matter and is obligated to pay reasonable attorneys' fees for services rendered.

WHEREFORE, the Plaintiff demands judgment for his damages as identified herein, including but not limited to, back pay and benefits, any benefits, and liquidated damages, punitive damages, compensatory damages in the amount to be proven at trial, together with costs, attorneys' fees and legal assistant fees, with prejudgment interest, pursuant to 29 U.S.C. § 216 and § 626, and any further relief this Honorable Court deems just and proper.

## COUNT II– AGE DISCRIMINATION PURSUANT TO
## THE FLORIDA CIVIL RIGHTS ACT

80.     The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 79, as fully set forth herein.

81.     At all times material hereto, the Plaintiff was and is a member of a protected class under the FCRA, at 58 years of age.

82.     The Plaintiff was qualified for the position of Golf Teaching Pro I, having performed it for over 17 years, and receiving high level ratings.

83.     Plaintiff was subject to severe and pervasive age related comments and subjected to concocted stories that led to discipline from Defendants and created a discriminatorily abusive hostile work environment.

84.     Defendants knew of the harassment as Defendants' supervisors condoned and participated in the age related harassment.

85.     Plaintiff complained to Defendants of the discriminatouly abusive and hostile work environment, but Defendants failed to take any action to correct the hostile work environment.

86.

87.     Plaintiff was subjected to an adverse employment action by being terminated by Defendants.

88.     The Plaintiff's age was the determining factor in the Defendants' decision to discharge the Plaintiff.

89.     The Defendants' termination of the Plaintiff, because of his age, violated the FCRA and said violation was willful.

90.     The Defendants replaced Plaintiff's position with a younger individual.

91.    The Defendant's violation of the FCRA caused the Plaintiff to suffer the following damages; loss past and future of income, loss of past and future employment-related benefits, resulting pain and suffering, mental anguish, loss of capacity for enjoyment of life, loss of personal reputation, humiliation, depression and anxiety.  Plaintiff is also entitled to liquidated damages for the willful conduct of Defendants.

92.    The Plaintiff has retained the law offices of Mandelbaum, Fitzsimmons, Hewitt & Cain, PA to represent him in this matter and is obligated to pay reasonable attorneys' fees for services rendered.

WHEREFORE, the Plaintiff demands judgment for damages as identified above, including all back pay and benefits, liquidated damages, punitive damages, compensatory damages in the amount to be proven at trial, together with costs, attorneys' fees and legal assistant fees, with prejudgment interest, all pursuant to Fla. Statute § 760.11 (5) and § 57.104., and any further relief this Honorable Court deems just and proper.

## COUNT III – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT (RETALIATION)

93. The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 79, as fully set forth herein.

94.    At all times material hereto, the Plaintiff was and is a member of a protected class under the ADEA, at 58 years of age.

95.    Plaintiff was subject to severe and pervasive age related comments and subjected to concocted stories that led to discipline from Defendants and created a discriminatorily abusive and hostile environment.

96.    Plaintiff complained, objected to and opposed the illegal age related harassment and discrimination.

97.    Because Plaintiff complained, objected to and opposed illegal age related harassment and discrimination Defendants took adverse employment action against Plaintiff.

98.    The Defendant's violation of the ADEA caused the Plaintiff to suffer the following damages; loss of income, loss of employment-related benefits, resulting pain and suffering, mental anguish, loss of capacity for enjoyment of life, loss of personal reputation, humiliation, depression and anxiety.

99.    Plaintiff is also entitled to liquidated damages for the willful conduct of Defendants.

100.    The Plaintiff has retained the law offices of Mandelbaum, Fitzsimmons, Hewitt & Cain, PA to represent him in this matter and is obligated to pay reasonable attorneys' fees for services rendered.

WHEREFORE, the Plaintiff demands judgment for damages, including but not limited to, back pay and benefits, interest on back pay and benefits, front pay and benefits, and liquidated damages in the amount to be proven at trial, Plaintiff's mental anguish, loss of dignity, loss of enjoyment of life, embarrassment, together with costs, attorneys' fees and legal assistant fees, with prejudgment interest, pursuant to 29 Fla. Statute § 760.11 (5), and any further relief this Honorable Court deems just and proper.

**COUNT IV – AGE DISCRIMINATION PURSUANT TO**
**THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(RETALIATION)**

101.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 79 as fully set forth herein.

102.    At all times material hereto, the Plaintiff was and is a member of a protected class under the ADEA, at 58 years of age.

103.    Plaintiff was subject to severe and pervasive age related comments and subjected to concocted stories that led to discipline from Defendants and created a discriminatorily abusive and hostile environment.

104.    Plaintiff complained, objected to and opposed the illegal age related harassment and discrimination.

105.    Because Plaintiff complained, objected to and opposed illegal age related harassment and discrimination Defendants took adverse employment action against Plaintiff.

106.    The Defendant's violation of the FCRA caused the Plaintiff to suffer the following damages; loss of income, loss of employment-related benefits, resulting pain and suffering, mental anguish, loss of capacity for enjoyment of life, loss of personal reputation, humiliation, depression and anxiety.

107.    Plaintiff is also entitled to liquidated damages for the willful conduct of Defendants.

108.    The Plaintiff has retained the law offices of Mandelbaum, Fitzsimmons, Hewitt & Cain, PA to represent him in this matter and is obligated to pay reasonable attorneys' fees for services rendered.

WHEREFORE, the Plaintiff demands judgment for damages, including but not limited to, back pay and benefits, interest on back pay and benefits, front pay and benefits, compensatory damages, damages for mental anguish and loss of dignity, and punitive damages in an amount to be proven at trial, together with costs, attorneys' fees and legal assistant fees, with prejudgment interest, pursuant to §§ 760.11 and 57.104, Florida Statute, and any further relief this Honorable Court deems just and proper.

## COUNT V - FLORIDA WHISTLE BLOWER ACT VIOLATION

109.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 79 as fully set forth herein.

110.    Florida law permits a civil action when an employee objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. FL ST § 448.102.

111.    Plaintiff objected to Defendants on multiple occasions about the illegal harassing treatment he was receiving in violation of the ADEA and the FCRA as alleged in Counts I through IV, *supra.*

112.    Moreover, Plaintiff objected to employees working while intoxicated and driving golf carts while under the influence of alcohol or other mind altering substances.

113.    Driving a golf cart while under the influence of alcohol or another mind altering substance is a violation of Fla. Stat. § 316.193.

114.    Because Plaintiff complained about the illegal activity described herein, he suffered an adverse employment action, as the Defendants terminated Plaintiff from his employment.

115.    Plaintiff has suffered damages from this termination to include lost wages, benefits, and compensatory damages.

WHEREFORE, the Plaintiff demands judgment for damages, including but not limited to, back pay and benefits, interest on back pay and benefits, front pay and benefits, compensatory damages, damages for mental anguish and loss of dignity, and punitive damages in an amount to be proven at trial. Together with costs, attorneys' fees and legal assistant fees, with prejudgment interest, pursuant to § 448.104, Florida Statute, and any further relief this Honorable Court deems just and proper.

## COUNT VI VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. §216(B)

116.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 78 as fully set forth herein.

117.    At all relevant times, Defendants have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Defendants have revenues exceeding $500,000 annually.

118.    At all relevant times, Defendants employee Plaintiff in a position that was non-exempt.

119.    Plaintiff worked overtime hours, in that he performed work in excess of 40 hours per week almost each and every week.

120.    As indicated herein, Defendants had a policy and practice of failing to pay Plaintiff overtime pay as required under the FLSA, to include that failure to pay Plaintiff on and one-half times his regular rate for the work performed in excess of the 40-hour workweek, as a violation of 29 U.S.C. § 207.

121.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, the balance of the under paid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

        WHEREFORE, the Plaintiff demands judgment for damages for overtime pay, together with costs, attorneys' fees and legal assistant fees, with prejudgment interest, pursuant to 29 U.S.C. §§ 216 and any further relief this Honorable Court deems just and proper.

## COUNT VII – UNPAID MINIMUM WAGE IN VIOLATION OF ARTICLE X, SECTION 24 OF THE FLORIDA CONSTITUTION AND THE FLORIDA MINIMUM WAGE ACT

122.    Article X, Section 24 of the Florida Constitution guarantees that employers must pay a minimum hourly wage for work performed.

20

123.   The Florida Minimum Wage Act ("FMWA"), Fla. Statute § 448.110 implements this guarantee under the Florida Constitution.

124.   Florida law has set for the hourly minimum wage requirements per year as follows:

    2016 - $8.05

    2017 – $8.10

    2018 – $8.25

    2019 – $8.46

125.   Defendants paid Plaintiff based on a tip credit.

126.   Plaintiff however worked jobs and tasks more than 20% of the time that did not qualify for a tip credit payment and were not performed contemporaneously with the duties involving direct service or for a reasonable time immediately before or after performing such direct-service duties.

127.   Defendants failed to pay Plaintiff the hourly minimum wage for these years in violation of Florida law for the hours Plaintiff worked those jobs and tasks that did not qualify for the tip credit payment.

128.   Defendants policies and practice in failing to pay Plaintiff the hourly minimum wage for the hours of work performed were a willful and egregious violation of the Florida constitution.

129.   The foregoing conduct, as alleged, constitutes a willful violation of Florida minimum wage laws.   Due to Defendants' minimum wage violations, Plaintiff is entitled to recover from Defendants, the balance of the under paid compensation, an equal amount as liquidated damages, reasonable attorneys' fees and costs pursuant to Florida Statute § 448.10.

130.   Plaintiff provided notice to Defendants counsel prior to brining any claim for unpaid minimum wages indicating his intent to initiate an action in compliance with Fla. Statute § 448.110 (6) (a) and (b). (See Exhibit "C" attached hereto).

WHEREFORE, the Plaintiff demands judgment for damages as indicated herein in the amount to be proven at trial, together with costs, attorneys' fees and legal assistant fees, with prejudgment interest, pursuant to Fla. Const. Art. X, § (24) (c) and (e), and any further relief this Honorable Court deems just and proper.

## TRIAL BY JURY

Plaintiff seeks a trial by jury on all counts herein as applicable under the law.

Submitted this __13__ day of November, 2020.

MANDELBAUM, FITZSIMMONS, HEWITT & CAIN, P.A.

SCOTT K. HEWITT, ESQ.
**Florida Bar No. 164836**
Post Office Box 3373
Tampa, Florida 33601
Telephone: (813) 221-0200
Fax: (813) 221-8558
Primary Service Email: skh@manfitzlaw.com
Secondary Service Email: drm@manfitzlaw.com
Attorney for Plaintiff